# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

# CHARLESTON DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,

v.                                              CRIMINAL ACTION NO. 2:19-cr-00255

CODY ALEXANDER HUDSON,

        Defendant.

## MEMORANDUM OPINION AND ORDER

The Court has reviewed the Defendant's *Motion to Suppress* (Document 42) and the *Response of the United States to Defendant's Motion to Suppress* (Document 46). The Defendant, Cody Hudson, seeks to suppress evidence derived from a traffic stop and the search of the vehicle he was driving.

Officers stopped a vehicle driven by the Defendant and owned by his passenger, Rebecca Marshall[1], purportedly because of a cracked windshield. The Defendant argues that the stop was not warranted and that it was improperly extended when officers directed him to exit the vehicle for a pat-down search, during which an officer observed a firearm in the vehicle. In addition, the Defendant seeks to suppress certain statements made while in custody. The United States argues that West Virginia law permits officers to stop a vehicle upon reasonable cause to believe it is not equipped in accordance with law. This includes a stop to determine whether a damaged

---

[1] The parties' briefing refers to the passenger as Rebecca Moore, but the police report and the officers who testified referred to her as Rebecca Marshall.

windshield obstructs the driver's vision. It further argues that the odor of marijuana provides probable cause for a search and/or reasonable suspicion to conduct a pat search for officer safety. In addition, the United States argues that extension of the stop was warranted because Mr. Hudson did not have a license or identification in his possession, and Ms. Marshall appeared to be under the influence of a controlled substance.

The Court held a suppression hearing on February 11, 2020, and heard testimony from Sergeant (then Detective) Moyer and Detective Stover of the South Charleston Police Department. The officers began surveilling the vehicle while it was parked at an apartment complex and observed the cracked windshield. They did not approach at that time. Instead, the officers followed the vehicle as Mr. Hudson drove through town. They conducted a traffic stop from their unmarked police car between midnight and 1:00 a.m. on May 23, 2019, due to the cracked windshield. A photograph of the windshield was introduced into evidence. It reveals a bullseye crack with damage radiating out near the upper middle portion of the windshield. Both officers testified that the glass remained transparent and you could see into the vehicle through the windshield.

Sgt. Moyer approached the driver's side of the vehicle, while Detective Stover approached the passenger's side. Both testified that they detected a strong odor of marijuana emitting from the vehicle as they approached. Based on prior familiarity, they knew Ms. Marshall's identity and were aware that the vehicle belonged to her. Sgt. Moyer asked Mr. Hudson for his drivers' license for identification purposes, which he was unable to produce. He identified himself as Zackary Keith Sorrells and provided a date of birth. Both Mr. Hudson and Ms. Marshall denied having any marijuana. Sgt. Moyer testified that he had not seen anything that suggested Mr.

Hudson was armed, had no reason to believe he was armed, that he had been cooperative, and that there was nothing dangerous about him prior to Sgt. Moyer requiring him to step out of the vehicle for a pat search. As he got out of the vehicle, some objects fell from his lap. He left them on the ground as instructed by Sgt. Moyer. After being removed from the car, he was questioned further about his identity. Sgt. Moyer testified that he appeared nervous, again identified himself as Zackary Sorrells, and stated a birth date that was one year different from the date previously provided. With the driver's side door left open, Mr. Hudson faced the car, standing between the driver's door and the rear passenger door while Sgt. Moyer conducted the pat search. When he reached Mr. Hudson's pant legs, Sgt. Moyer observed a firearm on the floor beside the driver's seat. Mr. Hudson was detained near the trunk of the car while Sgt. Moyer ran the firearm through NCIC. Mr. Hudson told Ms. Marshall, who was crying hysterically during some of the traffic stop, that he was sorry, to keep her head up, and that everything would be okay.[2] Sgt. Moyer testified that Mr. Hudson did not appear to be intoxicated. He believed Ms. Marshall was intoxicated and may have admitted to using methamphetamine, although Det. Stover, who interacted with Ms. Marshall, stated that he was unsure as to whether she was on anything and did not recall her saying she had used drugs.

Mr. Hudson was taken to the station, handcuffed, and shackled to a bench. He was not read his Miranda rights. Because Ms. Marshall appeared intoxicated, Det. Stover drove Ms. Marshall's vehicle to the station, and she was also taken to the station but was not arrested and was free to leave. While at the station, an officer conducted a Facebook search for Zackary Keith

---

[2] This statement is in part the subject of a motion to suppress. The Court finds that it does not appear to have been made in response to interrogation, and the motion to suppress as to this statement should be denied. However, the Defendant indicated he will challenge the statement's admissibility under the Rules of Evidence, and the statement should not be referenced prior to a ruling on any objections.

3

Sorrells and told Mr. Hudson (still, without Miranda) that it did not look like him. Mr. Hudson apologized for giving the wrong name. The officer found the name Cody Hudson somewhere and ran a search through the CAD system to confirm Mr. Hudson's identity.

The Court finds that the vehicle stop was supported by probable cause. West Virginia Code provides that windshields must be free of "any sign, poster, or other nontransparent material…which obstructs the driver's clear view of the highway or any intersecting highway." W. Va. Code § 17C-15-36. In addition, "The department of public safety may at any time upon reasonable cause to believe that a vehicle is unsafe or not equipped as required by law, or that its equipment is not in proper adjustment or repair, require the driver of such vehicle to stop and submit such vehicle to an inspection and such test with reference thereto as may be appropriate." *Id.* § 17C-16-2(a). The West Virginia Supreme Court has held that an officer has reasonable cause to stop a vehicle with a severely cracked windshield[3] "to inspect its windshield to determine whether such impairment was of a nature as to obstruct the driver's vision and render the vehicle unsafe." *State v. Noel*, 779 S.E.2d 877, 881–82 (W. Va. 2015). Upon review of the photograph, the Court finds that the damage to the windshield was sufficient to support the traffic stop.

However, the Court finds that the officers lacked reasonable suspicion to conduct a pat search of Mr. Hudson or probable cause to search the vehicle. "To justify a pat down of the driver or a passenger during a traffic stop, however, just as in the case of a pedestrian reasonably suspected of criminal activity, the police must harbor reasonable suspicion that the person subjected to the frisk is armed and dangerous." *Arizona v. Johnson*, 555 U.S. 323, 327 (2009).

---

3 The damage was described as "a large, horizontal crack in the windshield, which spanned from one side of the windshield to the other and had additional cracks radiating vertically from the main crack." *State v. Noel*, 779 S.E.2d 877, 879 (W. Va. 2015).

Neither officer testified that there was any reason to believe Mr. Hudson was armed or dangerous. In fact, Sgt. Moyer testified that he had no reason to believe Mr. Hudson was armed prior to removing him from the vehicle and seeing the gun while conducting the pat search. Further, Sgt. Moyer's testimony revealed that Mr. Hudson was compliant with all commands before and after he was removed from the vehicle.

Neither officer testified that they conducted a search or pat down based on detecting the smell of marijuana emitting from the vehicle when they initially approached. Both Mr. Hudson and Ms. Marshall denied marijuana use and no additional evidence of marijuana or contraband was in the officers' view. Ms. Marshall was never searched for marijuana or other contraband.

Mr. Hudson was arrested for obstruction and lying about his identity. It is not clear exactly when he was arrested, but the record does not suggest that there was evidence to support the arrest prior to the pat search. Sgt Moyer testified that he advised Mr. Hudson to exit the vehicle to conduct a pat down for safety. Neither officer testified that there was a reasonable suspicion that Mr. Hudson was armed and dangerous. The testimony on cross examination was to the contrary. Because the Court finds that neither the pat search nor a vehicle search was constitutionally permissible, the motion to suppress as to the firearm must be granted.

Although it may be moot considering the Court's ruling regarding the firearm, the Defendant also seeks to suppress his statement apologizing for lying about his identity. The statement was made while the Defendant was in custody, handcuffed and shackled to a bench in the police station, and in response to an officer commenting, while doing identity searches on the computer, that he did not look like Zachary Sorrells. "As a prophylactic safeguard for this constitutional guarantee [the Fifth Amendment], the Supreme Court has required law enforcement

5

to inform individuals who are in custody of their Fifth Amendment rights prior to interrogation." *United States v. Hashime*, 734 F.3d 278, 282 (4th Cir. 2013). There is no dispute here that Mr. Hudson was in custody. Although he was not being formally interrogated or interviewed, an officer directed a statement to him that he did not appear to be the person he had identified himself to be. That statement clearly called for a response and related to the obstruction charge for which he was arrested, and Mr. Hudson's apology was in response to that interaction initiated by the officer. Therefore, the Court finds that the motion to suppress must be granted as to Mr. Hudson's apology for lying about his identity.

Accordingly, after careful consideration and thorough review, the Court **ORDERS** that the Defendant's *Motion to Suppress* (Document 42) be **GRANTED** as set forth in more detail herein.

The Court **DIRECTS** the Clerk to send a copy of this Order to the Defendant and counsel, to the United States Attorney, to the United States Probation Office, and to the Office of the United States Marshal.

ENTER: February 14, 2020

IRENE C. BERGER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF WEST VIRGINIA